AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| D-1  Iqbal Singh VIRK | ) | Case: 2:24−mj−30373 |
| D-2  Ranjit Singh Rowal | ) | Assigned To : Unassigned |
|  | ) | Assign. Date : 8/29/2024 |
|  | ) | Description: COMP USA V. VIRK, ET. AL (KB) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **August 28, 2024** in the county of **St. Clair** in the **Eastern** District of **Michigan**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a) | Possession with intent to distribute controlled substances |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

*Complainant's signature*

Erald Azizaj, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/29/2024

*Judge's signature*

City and state: Detroit, Michigan

Honorable Elizabeth Stafford, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Erald Azizaj, being duly sworn, hereby state the following:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.   This affidavit is based on my own personal observations and knowledge as well as my review and analysis of oral and written reports, my discussions with other law enforcement officers, and my training and experience. The information outlined herein is provided for the limited purpose of establishing probable cause and does not contain all details or facts that exist pertaining to the investigation.

2.   I am a Special Agent and currently employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) since May of 2023. My formal education includes a Bachelor of Arts Degree in Criminal Justice and Political Science from Wayne State University. From June 2023 through January 2024, I attended the Federal Law Enforcement Training Center (FLETC) at Glynco, Georgia. During this time, I received formalized training in various investigative techniques required of every Special Agent trainee. Following my successful completion of the FLETC training program, I was assigned to HSI's Detroit Field Office.

1

3. In January 2024 I was assigned to the Detroit's BEST Narcotics Group. The Narcotics Group primarily investigates drug smuggling and drug trafficking cases which have originated across the U.S. borders. As a Special Agent, I have led and participated in investigations related to illegal drug trafficking. I have conferred with more senior narcotics investigators regarding better methods of discovering and documenting evidence.

4. Prior to my tenure as a Special Agent with HSI, I served as a Military Intelligence Officer in the United States Army for approximately seven years.

5. Based on this investigation, there is probable cause to believe that Iqbal Singh VIRK and Ranjit Singh ROWAL possessed with intent to distribute approximately 124 kilograms of cocaine in violation of Title 21 U.S.C. §§ 841(a) (Possession with Intent to Distribute a Controlled Substance).

## II.  **PROBABLE CAUSE**

6. On August 28, 2024, at approximately 0326 hours, Customs and Border Protection (CBP) Officers were conducting outbound customs inspections at the Port Huron Blue Water Bridge. CBP Officers selected

Iqbal Singh VIRK and Ranjit Singh ROWAL, Indian citizens and permanent residents of Canada, for an inspection.

7. CBP Officer Larson made initial contact with VIRK, the driver of the truck during inspection and ROWAL, the co-driver/passenger.

8. During the inspection, CBP Officer Larson asked VIRK if they had any guns, drugs, or cash over $5,000 in the truck and/or trailer to which VIRK replied "no". When asked who owned the truck, VIRK stated that he and his co-driver owned the truck. CBP Officer Larson asked if everything in the truck and trailer, besides the steel bars, belonged to him and his codriver, VIRK answered "yes". CBP Officer Larson asked if anyone had given him anything to take across the border, VIRK replied "no". When asked how long it took them to get here, VIRK stated that it was longer than usual as they stopped to fix their lights (at this point VERK gestured towards the trailer) in Indiana. CBP Officer Larson could not decern the town name VIRK stated, so CBP Officer Larson asked if it was in Indiana and who did the work, VIRK stating "yes" and that he and his codriver fixed them.

9. The truck and trailer were then escorted to the Rapiscan P25 X-ray system. A P25 X-ray scan was conducted on the truck and trailer

3

by CBP Officer Ruiz and CBP Officer Richardson at 0334 hours. The scan indicated anomalies located in the rear of the trailer which prompted CBP to escort both the truck and trailer to the cargo secondary inspection docks. During the cargo secondary inspection, VIRK and ROWAL were escorted to holding for observation.

10. At 0345 hours, TFO Stacey Logan, Bruce Dixon, and Guy Angelucci arrived at the port of entry (POE) and assisted A-TCET Officers (Camp, Larson, Dominique) with the physical examination of both the truck and trailer.

11. At 0354 hours, TFO Angelucci and K-9 Astra (Badge# 16) screened the truck and trailer that led to a positive alert for the presence of narcotics near the rear of the trailer. Physical examination of the anomaly and K-9 alert area revealed a non-factory compartment containing multiple bricks of white powder. The bricks were wrapped in cellophane into 7 or 8 brick bundles.



**Image 1 – Non-factory compartment**



**Image 2 – Suspected cocaine**

12.  The physical exam of inside the truck revealed cellophane rolls that appeared to match the bundles in which the narcotics were wrapped in. Additionally, tools were found inside of the truck that are believed to have been used to for the purposes of unscrewing the hidden compartment. The tools, which were located in the tractor portion of the

5

vehicle, matched the screws, and corresponded to the size of the bolts in the exterior of the compartment that contained the suspected cocaine.



**Images 3 & 4 – Tools and cellophane**



**Image 5 – Socket fitted to bolts on storage compartment.**

13. At 0436 hours, a field test was conducted by CBP Officer Larson and witnessed by CBP Officer Camp, utilizing Scott Reagent System Modified G, which was positive (presumptive) for cocaine. At 0500 hours, the contraband which totaled 115 bricks with a net weight of

124.08 kg was transported to the seizure processing area by CBP Officer Camp, Larson, and Dominique.

14. When interviewed with the assistance of a Punjabi language service, VIRK indicated to investigators that he had been a driver for approximately 7 years making routine, sometimes weekly, international crossings during his tenure. VIRK did not admit to possessing the suspected cocaine and ROWAL declined to be interviewed.

15. A search of a law enforcement databases revealed that the trailer's registration plate was registered to a company whose listed address is the same address as ROWAL's home address.

16. Due to my training and experience I estimate the value of the seized suspected cocaine to be approximately $3,750,000. Your affiant is aware through his training and experience that this amount of cocaine is consistent with large scale drug distribution activities.

17. Based on the foregoing, there is probable cause to believe that Iqbal Singh VIRK and Ranjit Singh ROWAL violated Title 21 U.S.C. §§ 841(a) (Possession with Intent to Distribute a Controlled Substance).

7

_____
Erald Azizaj, Special Agent
Homeland Security Investigations

Sworn and subscribed before me on this the 29th day of August, 2024.

_____
Hon. Elizabeth Stafford
United States Magistrate Judge

DATE: August 29, 2024

8